UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELIZABETH VALDEZ,<br><br>         Plaintiff,<br><br>    v.<br><br>GO BROOME LLC, GOTHAM REAL ESTATE MANAGERS, LLC, CITY OF NEW YORK, and DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT OF THE CITY OF NEW YORK,<br><br>         Defendants. | 25 cv 960<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff **ELIZABETH VALDEZ**, by her attorney, the law firm of James E. Bahamonde, P.C., and for her Complaint against Defendants **GO BROOME LLC, GOTHAM REAL ESTATE MANAGERS, LLC, CITY OF NEW YORK, and DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT OF THE CITY OF NEW YORK** alleges as follows:

## NATURE OF THE CASE

1. The Defendants denied Plaintiff **ELIZABETH VALDEZ**, an individual with paraplegia, access to an available and affordable two-bedroom apartment in their multifamily apartment building known as the Suffolk Apartments, located in Manhattan's Lower East Side, despite the fact that she was otherwise qualified and able to immediately move in, solely because she requested a reasonable accommodation

2. Accordingly, Plaintiff files the instant action against Defendants seeking to enjoin their discriminatory practices which violate the Fair Housing Act (42 U.S.C. § 3601 *et seq.)*, as well as the New York Human Rights Law ('NYSHRL') (N.Y. Executive Law § 296, *et seq.*), and the New York City Human Rights Law ('NYCHRL') (NYCHRL § 8- 107, *et seq.*).

3. Plaintiff seeks a declaratory judgment, and equitable and injunctive relief for Defendants' housing and disability discrimination under the FHA, NYSHRL, and NYCHRL. Additionally, Plaintiff seeks punitive damages against each Defendant for their reckless and/or callous indifference to their rights under the FHA, NYSHRL, and NYCHRL.

## JURISDICTION AND VENUE

4. During all relevant times, Plaintiff is now, and at all times mentioned in this complaint, a resident of New York County, New York.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. § 2201, and 42 U.S.C. § 3613.

6. This Court has supplemental jurisdiction over the New York State and New York City causes of action pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, or omissions, giving rise to this action, including the unlawful practices alleged herein, occurred within the District.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants' principal offices are located in New York County.

## THE PARTIES

9. Plaintiff **ELIZABETH VALDEZ** is paralyzed and unable to walk. Accordingly, she uses a wheelchair for ambulation.

10. During all relevant times, Plaintiff **ELIZABETH VALDEZ** has been a resident of New York County, New York.

11. During all relevant times, Plaintiff **ELIZABETH VALDEZ** was qualified to rent a two-bedroom apartment at the Suffolk Apartments located at 55 Suffolk Street, New York, NY.

12. During all relevant times, Defendant **GO BROOME LLC** has been a limited liability company authorized by the Secretary of State of New York to do business in New York State, with its principal County of business designated as New York County, New York.

13. During all relevant times, Defendant **GO BROOME LLC** has been the owner of the multifamily apartment building located at 55 Suffolk St., New York, New York.

14. Upon information and belief, and during all relevant times, Defendant **GO BROOME LLC** retained Defendant **GOTHAM REAL ESTATE MANAGERS, LLC** to manage the multifamily apartment building located at 55 Suffolk St., New York, New York.

15. During all relevant times, Defendant **GOTHAM REAL ESTATE MANAGERS, LLC** has been a limited liability company authorized by the Secretary of State of New York to do business in New York State with its principal County of business designated as New York County, New York.

16. Defendant **NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT** (hereinafter "HPD") is a public authority duly constituted and existing under and by virtue of the Laws of the State of New York.

17. **HPD** is a Mayoral Agency within the government of the City of New York responsible for developing, maintaining, and ensuring sound management of the City's stock of affordable housing.

18. Defendant **CITY OF NEW YORK** is a public authority duly constituted and existing under and by virtue of the Laws of the State of New York.

## STATUTORY AND REGULATORY FRAMEWORK

19. Under the FHA, NYHRL and NYCHRL, a housing provider is required to make reasonable accommodations in rules, policies, practices, or services, when such accommodations

may be necessary to afford persons with disabilities equal opportunity to use and enjoy a dwelling.

20. The FHA, NYHRL, and NYCHRL prohibit discrimination in the terms, conditions, or privileges of a rental, or in the provision of services of facilities in connection with the sale of a dwelling because of disability, 42 U.S.C. § 3604(f)(2).

21. The New York City Human Rights Law (NYCHRL) mandates that housing providers, including management companies, engage in a cooperative dialogue with persons who request reasonable accommodations based on disability. This cooperative dialogue aims to identify and provide necessary accommodations.

## FACTUAL BACKGROUND

22. During all relevant times, Plaintiff ELIZABETH VALDEZ is paralyzed and cannot stand or walk.

23. Defendant HPD is responsible for monitoring affordable housing in the City of New York. As the monitoring agency, Defendant HPD must review, approve, and provide written approval of all applications before a lease or contract for a unit can be signed.

24. City-sponsored affordable housing units are advertised to the public through a web site known as 'New York City Housing Connect.' Upon information and belief, the site is administered and controlled by HPD and the New York City Housing Development Corporation ('HDC') on behalf of the City of New York.

25. The household size and annual income eligibility criteria for each City-sponsored affordable housing project are specified on NYC Housing Connect. Potential applicants meeting these criteria can then apply for affordable housing directly on the web site.

26. Affordable apartments are offered to eligible applicants whose income falls within 40% of the Area Medium Income (AMI), 50% AMI, and 100% AMI. The most recently reported

4

AMI for New York City was $108,700 for a single individual.

27. During the application process, applicants are offered the opportunity to submit supporting documentation verifying household size and income.

28. Completed applications are selected by Defendant HPD using a randomized, lottery-type system.

29. Developers who create City-sponsored affordable housing in the City of New York are required to follow marketing and tenant selection procedures published by Defendant HPD and the HDC in the 'Marketing Handbook'.

30. Defendant Go Broome LLC's multifamily residential apartment building known as Suffolk Apartments participates in the City's affordable housing program. As a result of this, agents of Defendants Go Broome LLC and Gotham Real Estate Managers LLC ('Gotham') would occasionally contact Defendant HPD to inquire about the appropriate criteria or practices to follow.

31. Defendants Go Broome LLC and Gotham offered 95 affordable apartments for lease at The Suffolk Apartments.

32. Ms. Valdez qualified for an affordable two-bedroom apartment since she met the minimum income requirements.

33. In February 2023, Ms. Valdez applied for an affordable two-bedroom apartment at The Suffolk Apartments. When submitting her application on the Housing Connect site, Ms. Valdez specifically requested a two-bedroom apartment as a reasonable accommodation on account of her physical limitations and her disability-related medical equipment.

34. More precisely, due to Ms. Valdez's paralysis, she relies on a wheelchair for mobility as well as various disability-related medical equipment including a bath lift, motorized and manual wheelchairs, and medical supplies. These items occupy a substantial amount of

physical space and cannot feasibly be stored in a one-bedroom unit without obstructing Ms. Valdez's mobility and use of the apartment. Furthermore, Ms. Valdez is unable to lift and move this equipment physically. Therefore, an additional bedroom is essential to prevent safety hazards and mobility obstacles.

35. On June 13, 2023, Defendants informed Ms. Valdez that her application was successful and requested that she submit additional documentation to establish her income, a letter from a medical professional verifying her disability, along with proof showing her history of making rental payments.

36. On or about June 20, 2023, Ms. Valdez submitted a letter from her physician verifying her disability to the Housing Connect web site, accompanied by a renewed request for a second bedroom as a reasonable accommodation for her disability.

37. On August 21, 2023, Ms. Valdez was contacted by Natalie Bruck, a Compliance Specialist employed by Defendant Gotham, who asked for additional documentation to establish Ms. Valdez's eligibility.

38. Defendants allowed Ms. Valdez to apply for a two-bedroom apartment because of her disability-related needs.

39. Ms. Valdez submitted multiple requests for a reasonable accommodation to Ms. Bruck, which were never responded to. Likewise, Defendants have not provided a written response to Ms. Valdez's multiple requests for reasonable accommodation.

40. On October 3, 2023, Ms. Bruck informed Ms. Valdez that they had a two-bedroom apartment available and requested that Ms. Valdez submit a Disability Accommodation Verification Form from her physician.

41. On October 5, 2023, Ms. Bruck acknowledged the availability of a 40% and 50%

two-bedroom. Ms. Bruck also confirmed receipt of the Disability Accommodation Form and stated she was awaiting instruction from the Director of Defendant HPD regarding the appropriate income range to use for Ms. Valdez's application.

42. As noted above, in order to qualify for an affordable two-bedroom apartment at The Suffolk Apartments, a household's annual total income must fall within a certain range based upon Area Medium Income (AMI). AMI is defined as the midpoint of a region's income distribution and is calculated using a formula devised by the U.S. Department of Housing and Urban Development. For example, a two-member household with a total annual income between $35,829.00 and $49,720.00 falls into the 40% AMI category, and their expected monthly rental payments would amount to $903. A two-member household with an annual total income between $44,606.00-$62,150.00 falls into the 50% AMI category. Consequently, their expected monthly rental payments would be $1,159.

43. The Suffolk Apartments advertised the following criteria for unit size, AMI, household size, and household income:

| UNIT SIZE | AREA MEDIAN INCOME | MONTHLY RENT | HOUSEHOLD SIZE | ANNUAL HOUSEHOLD INCOME MINIMUM – MAXIMUM |
|---|---|---|---|---|
| 1 Bedroom | 40% AMI | $756 .00 | 1 person | $29,760.00-$43,480.00 |
| 2 Bedroom | 40% AMI | $903.00 | 2 people | $35,829.00-$49,720.00 |
| 1 Bedroom | 50% AMI | $969 00 | 1 person | $37,063.00-$54,350.00 |
| 2 Bedroom | 50% AMI | $1159.00 | 2 people | $44,606.00-$62,150.00 |

44. Applicants for affordable units must satisfy both the minimum and maximum income limits.

7

45. Normally, Defendants do not permit one person to apply for a two-bedroom apartment. However, a landlord may provide a reasonable accommodation to a qualified person with a disability who has a household size of one, allowing them to apply for a two-bedroom apartment if an additional bedroom is necessary due to their disability-related needs.

46. The rent at The Suffolk Apartments is not subsidized by the federal, State, or City government. Therefore, a single, disabled person applying for a two-bedroom apartment due to a disability-related must still meet the minimum income qualifications for a two-bedroom apartment.

47. To accommodate Ms. Valdez's disability-related needs, under the FHA, NYHRL and NYCHRL, Defendants are required to make a reasonable accommodation by allowing an exception to the household size and screening criteria. Doing so would enable Ms. Valdez to apply for a two-bedroom apartment, provided that her annual household income still meets the minimum income requirements for a two-bedroom apartment at either 40% AMI or 50% AMI.

48. More specifically, since Ms. Valdez requested a reasonable accommodation for an additional bedroom due to her disability-related needs, the income and household size of two persons should be used when calculating her eligibility. Therefore, at the time Ms. Valdez submitted her application in 2023, the minimum income threshold for a 40% AMI two-bedroom apartment in The Suffolk Apartments was $35,829.00, and the threshold for the maximum income for a household of two at 40% AMI was $44,200.00.

49. Ms. Valdez's total annual income at the time she submitted her application was $40,342.89. Consequently, she was qualified for a two-bedroom apartment in The Suffolk Apartments at 40% AMI. However, Defendant HPD did not take this fact into consideration when evaluating her application, and only recognized this in October 2024, nearly one year after all of the available affordable 40% AMI two-bedroom apartments were rented.

50. In October 2023, pursuant to Defendant HPD's direction, Defendant Gotham determined that Ms. Valdez's annual income was too high for a 40% AMI apartment, but too low for a 50% AMI apartment. Consequently, due to Defendants' policy and practice, along with Ms. Valdez requiring an additional bedroom as a reasonable accommodation, Defendants concluded that Ms. Valdez fell outside the income range and AMI of the affordable housing program.

51. On October 5, 2023, Jonathan Holoman, a Project Manager employed by Defendant HPD and who oversaw the development of The Suffolk Apartments, was made aware that Ms. Valdez was seeking a reasonable accommodation of an additional bedroom, and that Defendant Gotham had received all of her supporting documentation. Nonetheless, Mr. Holoman instructed Ms. Bruck that Ms. Valdez needed to fit between the minimum/maximum income for household size of one and unit size of two.

52. When Defendants attempted to determine the proper monthly rent, they derived a minimum/maximum income range between $35,795 – $39,560 by using the minimum income requirement for a 40% AMI two-bedroom apartment and a household size of one at 40% AMI.

53. Because Defendants provided Ms. Valdez a reasonable accommodation to apply for and rent a two-bedroom apartment, Defendants should have determined the minimum and maximum income range for a 40% AMI apartment based upon a 2-person household a two-bedroom apartment.

54. On October 9, 2023, Ms. Valdez asked Ms. Bruck to reevaluate her calculations due to her request for a reasonable accommodation. Ms. Valdez noted that her annual income fell within the 40% AMI band for a two-bedroom apartment, and she was thus qualified to rent a two-bedroom apartment.

55. On October 17, 2023, Ms. Bruck informed Ms. Valdez that Defendant Gotham's

9

Compliance Director had reviewed the file and reiterated the previous conclusion that Ms. Valdez fell outside the income requirements for a two-bedroom apartment at either the 40% or 50% AMI.

56. On October 30, 2023, Defendants' agent sent Ms. Valdez a rejection notice stating that her application has been rejected because her household income, which Defendants erroneously claimed was $26,251.80, did not fall in the available income ranges for units at The Suffolk Apartments.

57. On November 5, 2023, Ms. Valdez renewed her request for a reasonable accommodation to Mr. Holoman and corrected the erroneous amount of income Defendants had attributed to her application. Ms. Valdez repeated this request on November 17, 2023. However, Mr. Holoman never responded to either communication.

58. On November 6, 2023, Defendant Gotham stated that Ms. Valdez's application was denied because her annual income of $40,342.89 fell above the maximum for a 40% AMI two-bedroom apartment and was below the minimum income for a two-bedroom at 50% AMI.

59. On November 14, 2023, Ismael Checo, HPD Housing Connect, affirmed the denial of her application stating that her projected income was under the minimum requirement for an affordable unit at The Suffolk Apartments.

60. Defendants' methodology of determining whether a disabled person needing an additional bedroom is income qualified has a disparate impact on disabled individuals.

61. Defendant HPD has failed to train and instruct housing providers and developers in using the proper methodology to determine the income of a disabled person needing an additional bedroom because of their disability-related needs and request for reasonable accommodation.

62. The Marketing Handbook issued by Defendant HPD provides inadequate guidance and lacks clarity on how a housing provider or developer should determine the income of a disabled

10

person who requires additional bedroom because of their disability-related needs and request for reasonable accommodation.

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION
(Violations of the Fair Housing Act, 42 USC 3604 et seq.)

63. Plaintiff realleges and incorporates by reference all of the allegations set forth in this Complaint as if fully set forth herein.

64. During all relevant times, Plaintiff has had a handicap as defined in 42 U.S.C. § 3602(h).[1]

65. Plaintiff is an "aggrieved person" as defined in 42 U.S.C. §§ 3602(i) and 3613(a)(1)(A).

66. During all relevant times, Defendant **Go Broome LLC** has been the landlord to the multifamily dwelling development located at 55 Suffolk St, New York, NY. The development contains four or more units. As such, it is a covered multifamily dwelling as defined in U.S.C. § § 3604(f)(7).

67. During all relevant times, Defendant **Gotham Real Estate Managers, LLC** has been the management company to the multifamily dwelling development located at 55 Suffolk St, New York, NY.

68. Defendants have discriminated against Plaintiff in the rental, or to otherwise make unavailable or deny a dwelling to Plaintiff because of disability in violation of 42 U.S.C. § 3604(f)(1).

---

[1] The Fair Housing Act Amendments ("FHAA") uses the term "handicap" rather than "disability." Both terms have the same legal meaning. *See Bradgon v. Abbott*, 524 U.S. 624, 631 (1998). This complaint uses the terms "disability" and "handicap" interchangeably. The term "disability" is more generally accepted.

69. Defendants have discriminated against Plaintiff in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of disability in violation of 42 U.S.C. § 3604(f)(2).

70. Defendants have discriminated against Plaintiff by refusing to make reasonable accommodations in the rules, policies, practices, or services, when such accommodations are necessary to afford Plaintiff equal opportunity to use and enjoy a dwelling in violation of 42 U.S.C. § 3604(f)(3)(B).

71. Defendants have pursued their discriminatory practices for the purpose, and/or with the effect, of excluding disabled individuals who require an additional bedroom as a reasonable accommodation from residing at Defendant's multifamily dwelling development.

72. As a direct and proximate result of Defendants' unlawful discrimination in violation of the Fair Housing Act, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to depression, humiliation, stress, headache and attendant bodily injury, stomach-ache, digestive disorder, embarrassment, anxiety, loss of self-esteem and self-confidence, emotional pain, and otherwise sustained injuries.

73. As a direct and proximate result of Defendants' unlawful discrimination in violation of the Fair Housing Act, Plaintiff has been injured and has suffered lost housing opportunity.

74. Defendants' discriminatory actions were intentional, willful, and with reckless disregard for the rights of the Plaintiff. Defendants also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, Plaintiff is entitled to punitive damages under 42 U.S.C. § 3613(c).

## SECOND CAUSE OF ACTION
### (Disparate Impact in violation of the Fair Housing Act)

75. Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

76. Defendant's policy and practice of requiring disabled persons who require an additional bedroom because of their disability related needs to be simultaneously income qualified for a two-bedroom apartment and household of one has a disparate impact against persons with disabilities in violation of the FHA.

77. As a direct and proximate result of Defendant's actions that have a disparate impact, in violation of the Fair Housing Act, Plaintiff has suffered damages, including emotional distress and lost housing opportunity.

78. Defendant's failure to design and construct was intentional, willful, or with reckless disregard for the rights of Plaintiffs. Defendants also knew of or ratified the discriminatory acts of their agents, ignored their duties under the law, or otherwise engaged in knowledgeable inaction.

## THIRD CAUSE OF ACTION
### (Violations of New York State Human Rights Law)

79. Plaintiff realleges and incorporates by reference all of the allegations set forth in this Complaint as if fully set forth herein.

80. Plaintiff ELIZABETH VALDEZ and Defendants are "persons" as defined in New York State Executive Law § 292(1).

81. Defendant Go Broome LLC's apartment building located at 55 Suffolk St, New York, NY is a "multifamily dwelling" as defined in New York State Executive Law § 292(12).

82. The multifamily dwelling located at 55 Suffolk St, New York, NY is a "housing accommodation" as defined in New York State Executive Law § 292(10).

83. Defendant Go Broome LLC's multifamily dwelling located at 55 Suffolk St, New York, NY contains three or more separate housing accommodations.

84. Plaintiff has a disability as defined in New York State Executive Law § 292(21).

85. Defendants and their agents have aided, abetted, incited, compelled, or coerced the doing of any of the acts forbidden under New York State Human Rights Law, or attempted to do so in violation of New York State Executive Law § 296(6).

86. Defendants have discriminated against Plaintiff by refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations are necessary to afford Plaintiff equal opportunity to use and enjoy a dwelling in violation of New York State Executive Law § 296(18)(2).

87. As a direct and proximate result of Defendants' unlawful discrimination in violation of the New York State Executive Law, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to depression, humiliation, stress, headache and attendant bodily injury, stomach-ache, digestive disorder, embarrassment, anxiety, loss of self-esteem and self-confidence, emotional pain, and otherwise sustained injuries.

88. As a direct and proximate result of Defendants' unlawful discrimination in violation of the New York State Executive Law, Plaintiff has been injured and has suffered lost housing opportunity.

89. Defendants' discriminatory actions in violation of New York State Executive Law were intentional, willful, and with reckless disregard for the rights of the Plaintiff. Defendants also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, Plaintiff is entitled to punitive damages under New York Executive Law § 297(10).

## FOURTH CAUSE OF ACTION
### (Violations of New York City Human Rights Law)

90. Plaintiff realleges and incorporates by reference all of the allegations set forth in this Complaint as if fully set forth herein.

91. During all relevant times, Plaintiff has had a disability as defined by New York City Human Rights Law, NYC Administrative Code § 8-102(16).

92. Plaintiff is a person as defined by New York City Human Rights Law § 8-102(1).

93. The apartment building where Plaintiff applied to move into is a "housing accommodation" as defined by New York City Human Rights Law § 8-102(10).

94. Plaintiff has requested a "reasonable accommodation" as defined in New York City Human Rights Law, NYC Administrative Code§ 8-102(18).

95. Defendants have aided, abetted, incited, compelled and coerced the doing of acts forbidden under the Administrative Code, or attempted to do so in violation of New York City Human Rights Law, NYC Administrative Code § 8- 107(6).

96. Defendants have discriminated against Plaintiff for failing to make reasonable accommodation to enable Plaintiff, a person with a disability, to have equal opportunity to use and enjoy a dwelling in violation of New York City Human Rights Law, NYC Administrative Code § 8-107(15).

97. The reasonable accommodation requested by Plaintiff does not impose an undue hardship.

98. With the reasonable accommodation, Plaintiff can enjoy the right or rights in question.

99. Defendant's policy and practice of requiring disabled persons who require an additional bedroom because of their disability related needs to be simultaneously income qualified

15

for a two-bedroom apartment and household of one has a disparate impact against persons with disabilities in violation of New York City Human Rights Law, NYC Administrative Code § 8-107(17).

100. Defendants have discriminated against Plaintiff for refusing or otherwise failing to engage in the cooperative dialogue within a reasonable time with Plaintiff who has requested an accommodation in violation of New York City Human Rights Law, NYC Administrative Code § 8-107(28)(c).

101. Defendants have failed to engage Plaintiff in a cooperative dialogue to discuss the reasonable accommodation requested within a reasonable time.

102. Defendants failed to provide Plaintiff with a written determination identifying any accommodation granted or denied.

103. As a direct and proximate result of Defendants' unlawful discrimination in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to depression, humiliation, stress, headache, stomach-ache, digestive disorder, embarrassment, anxiety, loss of self-esteem and self-confidence, emotional pain, and otherwise sustained injuries.

104. As a direct and proximate result of Defendants' unlawful discrimination in violation of the New York City Human Rights Law Plaintiff has been injured and has suffered lost housing opportunity.

105. Defendants' discriminatory actions were intentional, willful, and with reckless disregard for the rights of the Plaintiff. Defendants also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under New York City Human Rights Law § 700.29(A)(4), Plaintiff is entitled to punitive

16

damages.

106. Plaintiff has served a copy of the complaint upon the City Commission on Human Rights and Corporation Counsel, pursuant to the New York City Administrative Code § 8-502(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

A. Plaintiff seeks declaratory judgment, declaring that the conduct of Defendants constitutes violations of the Fair Housing Act Amendments, New York State Human Rights Law, and New York City Human Rights Law.

B. Issue an injunction permanently enjoining Defendants' agents, employees, and successors, and all other persons in active concert or participation from discriminating on the basis of disability against any persons in violation of the Fair Housing Act of 1968, as amended, New York State Human Rights Law, and New York City Human Rights Law, including an injunction prohibiting the following:

    (1) Disability discrimination in violation of the Fair Housing Act Amendments, New York State Human Rights Law, and New York City Human Rights Law;

    (2) Aiding, abetting, coercing, intimidating and discriminating based on disability;

    (3) Refusing to make a reasonable accommodations;

    (4) Refusing to engage in an interactive process within a reasonable time;

C. Permanent injunction requiring Defendants to

   (1) make all necessary reasonable accommodations to comply with fair housing laws;

   (2) use the appropriate eligibility criteria to determine if the annual income of a disabled individual, who requires an additional apartment due to a disability-related need, exceeds the minimum income requirement;

   (3) waive the required household composition for a larger size unit when a disabled request an additional apartment because of the disability related needs;

   (4) engage Ms. Valdez in the cooperative dialogue within a reasonable time to determine the necessary accommodation;

   (5) provide Ms. Valdez with a written determination identifying any accommodation granted or denied;

   (6) Modify its eligibility criteria so that it does not have a disparate impact against disabled individuals who require an additional bedroom; and

   (7) train all management, agents, and employees on fair housing laws and use of the correct methodology to determine eligibility and qualifications;

  D. Have the court retain jurisdiction over the Defendants until the Court is satisfied that their unlawful practices, acts and omissions no longer exist and will not reoccur.

  E. Award such damages to Plaintiff to compensate for the injuries caused by Defendants' unlawful discrimination in violation of the Fair Housing Act;

  F. Award such damages to Plaintiff to compensate for the injuries caused by Defendants' unlawful practices in violation of New York State Human Rights Law;

  G. Award such damages to Plaintiff to compensate for injuries caused by Defendants' unlawful practices in violation of New York City Human Rights Law,

H.	Award punitive damages to Plaintiff for Defendants' violation of the Fair Housing Act, New York State Human Rights Law, and New York City Human Rights Law;

I.	Award Plaintiff reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

J.	Grant Plaintiff such other further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial on the merits by jury pursuant to Fed. R. Civ. P. 38.

Dated: January 29, 2025

**LAW OFFICE OF JAMES E. BAHAMONDE, P.C.**

By: _____
James E. Bahamonde
2501 Jody Court
North Bellmore, NY 11710-1940
Tel. (646) 290-8258
James@CivilRightsNY.com

*Attorneys for Plaintiff*